## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLA ROSEWOOD, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, 999 Lake Drive, Issaquah, WA 98027, and NICE-PAK PRODUCTS, INC., One Blue Hill Plaza, Suite 1569, Pearl River, NY 10965<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

### PREAMBLE

Plaintiff Ella Rosewood ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Costco Wholesale Corporation and Nice-Pak Products, Inc. (collectively "Costco" or "Defendants") regarding the false and deceptive marketing and sale of Kirkland Signature Baby Wipes (the "Product"). Costco represents to consumers that the Products are "plastic free" and "made with Naturally Derived Ingredients." Plaintiff's testing, however, reveals that the Product contains significant levels of microplastics, exposure to which can cause a range of harmful human health consequences—especially when exposure begins at a young age. The presence of microplastics is especially concerning considering that the Product is meant for use on newborns and young children, that children are more vulnerable to exposure to microplastics, and that microplastics build up over time and accumulate in the body, increasing the risk of disease later in life.

Defendants Costco Wholesale Corporation and Nice-Pak Products, Inc.'s conduct violates business and state consumer protection laws, constitutes a breach of express and implied warranties, and results in unjust enrichment. Plaintiff Rosewood alleges the following based upon the investigation of her counsel and upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## INTRODUCTION

1.      Costco markets and sells its Product[1] in New York.

2.      On the Product packaging, Costco represents that the Product is "plastic free," "made with Naturally Derived Ingredients," and "helps maintain healthy skin."[2]

3.      Via Costco's consumer-facing website, Costco represents that the Kirkland Signature brand baby wipes are pure, "quality-made," "plant-based," and "plastic free."[3]

4.      The same website represents that the baby wipe Product is "made with soft fibers that are derived from trees grown in environmentally managed forests and made into plant-based material in an eco-responsible manner."[4]

5.      The Costco website and on-package representations at issue in this action are accessible to consumers in New York and nationwide.

---

[1] Plaintiff alleges that any Costco baby wipe products that contain microplastics are within the scope of this Complaint. Plaintiff reserves the right to add future Products as a result of further discovery. Plaintiff notes that Costco products are sold under the private label brand, Kirkland Signature. *See Kirkland Signature means quality and value*, COSTCO WHOLESALE, https://www.costco.com/kirkland-signature.html (last visited May 22, 2025).

[2]      *Kirkland Signature Baby Wipes Fragrance Free, 900-count*, COSTCO WHOLESALE, https://www.costco.com/kirkland-signature-baby-wipes-fragrance-free-900-count.product.100801219.html (last visited May 22, 2025).

[3] *Id.*

[4] *Id.*

CLASS ACTION COMPLAINT

6.      Consumers within New York and across the country believe that plastic pollution—particularly through microplastics—presents significant harm to human health and the environment.

7.      Consumers within New York and across the country are also interested in products that are better for their health and are increasingly concerned about what they knowingly—and unknowingly—absorb through their skin.

8.      Further, consumers within New York and across the country are increasingly worried about the products, substances, and chemicals they expose to newborns and young children.

9.      Due to these concerns, many consumers are reevaluating their purchasing choices and the effects of those choices on their health, their families' health, and the environment.

10.     Because of growing concerns about environmental and human health harms, consumers are willing to seek out less harmful services or products. Consumers prefer to support companies that protect their health and share their values, including a commitment to reducing impact on the environment and protecting the health of newborns and young children.

11.     For these reasons, it is increasingly beneficial for companies that sell products for use with newborns, babies, and young children to advertise themselves as "plastic-free," "pure," and "safe," despite the reality that their products contain microplastics.

12.     Microplastics have become increasingly pervasive, with recent studies finding microplastics in every human placenta and testicle studied,[5] as well as in every blood sample

---

[5] Damian Carrington, *Microplastics found in every human testicle in study*, THE GUARDIAN (May 20, 2024), https://www.theguardian.com/environment/article/2024/may/20/microplastics-human-testicles-study-sperm-counts; Michael Haederle, *Microplastics in Every Human Placenta, New UNM Health Sciences Research Discovers*, UNM HEALTH SCIENCES NEWS (Feb. 20, 2024), https://hsc.unm.edu/news/2024/02/hsc-newsroom-post-microplastics.html.

taken.[6]

13.     Plastic pollution generally is so widespread that a 2019 study commissioned by World Wildlife Fund International estimated that the average person could be consuming upwards of 5 grams of plastic every week, which is equivalent to roughly the weight of an entire credit card.[7]

14.     Once microplastics enter the bloodstream, they can spread all throughout the body. These microplastics put stress on the body's immune system and have been found to increase the rate at which cancer cells spread.[8]

15.     Research has found that microplastics exposure, even in low doses, during the early developmental stage can induce long-term and devastating health effects, including higher likelihoods of illness later in life.[9]

16.     Further, newborns and young children are more susceptible to microplastic absorption through the skin because their most superficial layer of skin is thinner and more permeable compared to adults.[10]

17.     Lastly, exposure to microplastics in infancy induces numerous changes to the digestive, reproductive, central nervous, immune, and circulatory systems of children, which can

---

[6] *Microplastics Found in Human Hearts*, PLASTIC POLLUTION COAL. (Mar. 7, 2024), https://www.plasticpollutioncoalition.org/blog/2023/8/18/microplastics-found-in-human-hearts.

[7] *You may be eating a credit card's worth of plastic each week - study*, REUTERS (June 11, 2019), https://www.reuters.com/article/us-environment-plastic/you-may-be-eating-a-credit-cards-worth-of-plastic-each-week-study-idUSKCN1TD009.

[8] Simon Ducroquet & Shannon Osaka, *The Plastics We Breathe*, THE WASHINGTON POST (June 10, 2024), https://www.washingtonpost.com/climate-environment/interactive/2024/microplastics-air-human-body-organs-spread/.

[9] Nur Hanisah Amran et. al., *Exposure to Microplastics during Early Developmental Stage: Review of Current Evidence*, 10 TOXICS 597, 597 (Oct. 10, 2022).

[10] *Id.*

have negative health consequences later in life.[11]

18.     Contrary to Costco's marketing representations to consumers, its Product is exposing newborns and children to significant levels of microplastics.

19.     Testing through an independent third-party lab revealed the presence of microplastic in the Product at levels 1153.1x the level of microplastic particles in the control (laboratory grade isopropyl alcohol).

20.     No reasonable consumer who sees Costco's representations would expect that its Product exposes them, their babies, or their family to microplastics.

21.     Costco promotes the Product as "plant-based" and "plastic free" on the Product's packaging and on the Costco website, even though microplastics have been found in the Product.

22.     By misrepresenting the nature and quality of its Product, Costco is able to capture the growing market of consumers who are concerned about plastic pollution and seek to support businesses with practices that are friendly to the environment and human health.

23.     Costco's false and misleading representations and material omissions violate business and state consumer protection laws, constitute a breach of express and implied warranties of merchantability, and result in unjust enrichment.

24.     For clarity, Plaintiff Rosewood brings this suit on behalf of similarly situated consumers ***not*** due to any alleged safety issues with the Product or failure to meet any government regulation. Rather, Plaintiff Rosewood brings this suit on the basis that the presence of microplastics in the Product render the representations Costco makes about the Product misleading

---

[11] *Id.*

CLASS ACTION COMPLAINT

to consumers and, thus, Defendants breach the warranties they made to consumers and were unjustly enriched as a result.

25.    Plaintiff Rosewood brings this class action on behalf of herself, and all others similarly situated, seeking equitable and monetary relief.

## PARTIES

26.    Defendant Costco Wholesale Corporation is a membership warehouse club incorporated and headquartered in Washington State.

27.    Defendant Nice-Pak Products, Inc. is a New York corporation that manufactures the Product for sale under the Kirkland Signature label at stores operated by Defendant Costco Wholesale Corporation throughout the United States, including New York.

28.    Defendants market and sell the Product in stores and online in New York and throughout the country.

29.    Plaintiff Rosewood is a citizen of the State of New York and a resident of Kings County.

30.    Plaintiff Rosewood purchased Costco Kirkland Signature Baby Wipes for her infant beginning in July 2024 and again in March 2025.

31.    Plaintiff Rosewood purchased the Product at a Costco located at 976 3rd Avenue, Brooklyn, NY 11232.

32.    Plaintiff Rosewood has also paid to receive the Product from a Costco located at W162N9235 Pershing Ave, Menomonee Falls, WI 53051.

33.    Plaintiff Rosewood was attracted to the Product because of the Product packaging which stated that the Product was "natural," and "for sensitive skin."

34.     Plaintiff Rosewood, at the time of purchase, saw the Product's labeling and believed it was safe and free from microplastics.

35.     The representations of the Product were material to Plaintiff Rosewood and encouraged her to make her purchases. Plaintiff Rosewood relied upon these representations, which as a consumer she had no reason to doubt.

36.     Plaintiff Rosewood would not have purchased the Product or would not have purchased the Product on the same terms, if she had known that contrary to Costco's representations, the Product contained microplastics.

37.     As a direct result of Costco's material misrepresentations and omissions, Plaintiff Rosewood suffered, and continues to suffer, economic injuries.

38.     On May 14, 2025, Plaintiff Rosewood sent each Defendant a notice letter about the allegations set forth in this Complaint.

39.     Accordingly, Plaintiff Rosewood, on behalf of herself and all other members of the proposed Class, seeks relief, including punitive damages, from Costco's acts and practices.

## JURISDICTION AND VENUE

40.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act.  There are more than 100 members in the proposed class. Plaintiff is a citizen of New York and consents to this Court's jurisdiction. Defendant Costco Wholesale Corporation has its principal place of business in Washington State and Defendant Nice-Pak Products, Inc. has its principal place of business in New York.

41.     The amount in controversy exceeds the sum of $5,000,000, exclusive of interest

and costs.

42. This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

43. Defendants have sufficient minimum contacts with New York to establish personal jurisdiction of this Court over them because, *inter alia*, they engage in deceptive schemes and acts directed at persons residing in, located in, or doing business in New York, or otherwise purposefully avails themselves of the laws of New York through their marketing and sales there.

44. Defendants market to consumers within New York. The Product can be, and is, purchased in New York by consumers, who have access to Costco's marketing and on-label representations about the Product, both online and in stores on the Products' packaging.

45. Defendants operate a dedicated interactive website that specifically targets New York consumers by featuring a store locator function, designed to guide residents to retailers within New York where the Product is sold. Shown below is a screenshot from the website highlighting these New York store locations.[12]

---

[12] *Kirkland Signature Baby Wipes Fragrance Free, 900-count, supra* note 2.



46.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading marketing and advertising regarding the nature of the Product and sales of the Product at issue, occurred within this District.

## FACT ALLEGATIONS

**I.    Defendants Make False and Deceptive Representations About the Plastic Content of the Product.**

47.     Defendant Costco makes affirmative on-package representations about the safety of the Product—namely, that the Product is "plastic free" and made with "plant-based material."



48.     Costco also makes on-package representations that its Product is "made with Naturally Derived Ingredients."



49.     On its website during the Class Period (defined *infra* ¶ 77), Costco stated that its "wipes are made from 100% renewable resources" and represents that the Product is "suitable for sensitive skin."[13]

50.     The representations made by Costco, are intended to, and do, lead consumers to believe that the Product is safe, and free from substances that are harmful to human health. In

---

[13] *Id.*

reality, the Product contains microplastics, which accumulate in the body and lead to extensive potential negative health impacts.

## II.    Defendants' Representations are Material to Consumers.

51.    Costco's representations that its Product is safe and free from plastics are material to consumers who care about making environmentally conscious and health-conscious purchasing decisions.

52.    Baby safety in particular remains a top concern for parents, with the global market for baby safety products at an estimated value of $255.83 billion in 2024.[14]

53.    One study found that "61% of Americans are concerned about the products they put in, on and around their bodies" and "81% assume the personal care products they use adhere to strict quality and safety standards."[15]

54.    Other research has found that "[c]onsumers want brands and retailers to be more transparent and open about their products."[16] In fact, "1 in 3 [U.S. consumers] use online resources to see how ingredients are sourced."[17] Also, "72% of U.S. shoppers said brand transparency is 'extremely important' or 'important.'"[18]

---

[14] Nicholas Morine, *Parents Seeking Safety, Value, and a Return to Nature When Buying Products for Their Babies*, RETAILWIRE (Jan. 3, 2025), https://retailwire.com/parents-safety-value-products-babies/.

[15] *Most Americans Are Concerned About the Safety of Many Consumer Products – Yet Few Research Claims*, NSF (May 16, 2019), https://www.nsf.org/news/most-americans-are-concerned-about-the-safety-of-many-consumer-products.

[16] Elizabeth Christenson, *Transparency influences shopper's beauty, personal care purchases*, DRUG STORE NEWS (Nov. 15, 2022), https://drugstorenews.com/transparency-influences-shoppers-beauty-personal-care-purchases.

[17] *Id.*

[18] *Id.*

55.     In fact, Costco's website evinces acknowledgement of this consumer trend by stating that: "More than ever, parents…want products for their children that deliver outstanding cleansing, but are also respectful of the environment."[19]

56.     In addition, consumers seek "natural" products and are often willing to pay more for these products.[20]

57.     Regarding microplastics specifically, one survey found that consumers would be willing to pay "higher prices" for "products [that are] certified microplastic-free."[21]

58.     Consumers in general are seeking to avoid plastics. In fact, one study found that "a third of adults in the United States say they have reduced their use of plastic products over the past five years."[22]

59.     Here, Defendants are selling a Product meant to be used on newborns and young children and makes specific representations about the plastic content—or supposed lack thereof—in its Product. Thus, Defendants' representations are material to consumers.

**III.    Despite Defendants' Representations, the Product Contains Significant Levels of Microplastics, Posing a Significant Risk to Newborn Health.**

60.     Testing facilitated by Plaintiff's counsel and conducted by an independent laboratory found microplastics in the Products at levels 1153.1x the level of microplastic particles in the control (laboratory grade isopropyl alcohol). The testing information is as follows:

**Product Tested:** Kirkland Signature Baby Wipes Fragrance Free

---

[19] *Kirkland Signature Baby Wipes Fragrance Free, 900-count, supra* note 2.

[20] Allison Rittman, *Consumers Seek Trust and Reliability in 'Natural' Labels*, PREPARED FOODS (June 13, 2023), https://www.preparedfoods.com/articles/128258-consumers-seek-trust-and-reliability-in-natural-labels.

[21] Scott Indrisek, *How concerned are Americans about microplastics?*, STAGWELL MARKETING CLOUD (Dec. 22, 2024), https://www.stagwellmarketingcloud.com/blog/microplastic-cookware-anxiety.

[22] Bella Isaacs-Thomas, *1 in 3 Americans say they've reduced how much plastic they're using,* PBS (Apr. 3, 2024), https://www.pbs.org/newshour/science/1-in-3-americans-say-theyve-reduced-how-much-plastic-theyre-using.

**Test Report Generated:** April 4, 2025

**Laboratory:** Parverio Inc., located in West Henrietta, NY

**Methodology:** The lab filtered the water from the sample to capture debris particles suspended in the liquid (8 μm slits), performed in a laminar flow hood. The lab then stained the sample with a fluorescent dye to identify which of the small microparticulates were plastic and washed away the residue. Larger fibers and particles are separated automatically into smaller particles through an operation known as watershedding. This operation permits the separation of particles that are adjacent into individual particles, however, larger fibers are separated into smaller particles for counting purposes.

61.    Microplastics are any plastics less than five millimeters in length that come primarily from larger plastic debris that degrades into smaller pieces over time.[23]

62.    Microplastics have been shown to leach hazardous chemicals, and have been linked to cancer, weakened immune systems, endocrine and reproductive problems, nervous system problems, hearing loss, and metabolic disturbances, among other harmful health effects.[24]

63.    Microplastics exposure, even in low doses, during the early developmental stage can induce long-term and devastating health effects.[25]

64.    These hazardous substances are particularly harmful to "pregnant people . . . and in babies, children, and youth whose hormone systems are [] extremely active to guide healthy growth and development."[26]

---

[23] Vedant Sharma, *Microplastic: A Potentially Silent But Deadly Killer*, PRE-COLLEGIATE GLOB. HEALTH REVIEW (Oct. 14, 2021), https://www.pghr.org/post/microplastic-a-potentially-silent-but-deadly-killer.

[24] *Id.*; Yage Li et al., *Leaching of Chemicals from Microplastics: A Review of Chemical Types, Leaching Mechanisms and Influencing Factors,* 906 SCIENCE TOTAL ENV'T (Oct. 15, 2023), https://pubmed.ncbi.nlm.nih.gov/37820817/.

[25] Nur Hanisah Amran et. al., *supra* note 9, at 597.

[26] *From Womb to World, Plastics Harm Babies: How to Protect Their Health*, PLASTIC POLLUTION COAL. (May 12, 2024), https://www.plasticpollutioncoalition.org/blog/2024/5/12/from-womb-to-world-plastics-harm-babies.

65.     Microplastics exposure during the neonatal period is linked to the development of multiple illnesses in adulthood.[27]

66.     Microplastics can be inhaled through the respiratory system as well as absorbed through the skin.[28]

67.     Newborns and young children are more susceptible to microplastic absorption through the skin because their most superficial layer of skin is thinner and more permeable compared to adults.[29]

68.     Exposure to microplastics in infancy induces numerous changes to the digestive, reproductive, central nervous, immune, and circulatory systems of children, which can have negative health consequences later in life.[30]

## IV.     Defendants Are Misleading Consumers About the Product.

69.     Consumers see Costco's assurances about the absence of plastic in its Product and reasonably believe that the Product would not contain and subsequently expose them or their children to any level of microplastics.

70.     Consumers seeing Costco's additional representations about the ingredients of the Product being "made with Naturally Derived Ingredients" and "suitable for sensitive skin" would not expect the Product to contain man-made microplastics, which accumulate in the body and lead to extensive negative health impacts later in life.

---

[27] Nur Hanisah Amran et. al., *supra* note 9, at 598.
[28] *Id.* at 599.
[29] *Id.*
[30] *Id.* at 610.

71.     Consumers are also misled by Costco's representation that the "wipes are made from 100% renewable resources" because that statement implies a degree of environmental responsibility that is contradicted by the presence of environmentally unsustainable microplastics.

72.     All of these representations are material to consumers.

73.     Consumers do not want to be exposed to microplastics, and they especially do not want to expose their infants and young children to such a harmful substance.

74.     Many consumers purchase a Costco membership[31] in order to have access to the Product.[32] Thus, consumers are paying a premium for a Product that they would not have been willing to pay if they had known about the presence of microplastics in the Product.

75.     Reasonable consumers are not in a position to access or use the sophisticated testing equipment necessary to discover whether microplastics exist in the Product. Consumers must, and do, rely on Defendants' marketing, which Defendants knows and use to their advantage.

## CLASS ALLEGATIONS

76.      Plaintiff Rosewood re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

77.     Plaintiff Rosewood brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals within the United States (the "Class"), defined as follows: all consumers who purchased the Product within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

---

[31] *See Join Costco*, COSTCO WHOLESALE, https://www.costco.com/join-costco.html (last visited May 22, 2025).

[32] The Products can also be purchased/secured without a Costco membership.

78.     Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Product in New York during the Class Period (the "New York Subclass").

79.     Excluded from the Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

80.     There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)     Whether Defendants are responsible for the marketing at issue;

(b)     Whether the marketing of the Product was unfair, misleading, false, deceptive, and/or unlawful;

(c)     Whether the sale of the Product was unfair, misleading, false, deceptive, and/or unlawful;

(d)     Whether Defendants breached any warranties made to consumers;

(e)     Whether Defendants were unjustly enriched; and

(f)     Whether Defendants' conduct as set forth above injured Plaintiff Rosewood and Class members.

81.     Plaintiff Rosewood's claims are typical of the claims of the Class. Plaintiff Rosewood is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by Defendants' conduct and are owed the same relief, as alleged in this Complaint.

82.     The precise number of the Class members and their identities are unknown to Plaintiff Rosewood at this time but may be determined through discovery.

83.     Plaintiff Rosewood will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Rosewood will vigorously pursue the claims of the Class and Subclass.

84.     Plaintiff Rosewood has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Rosewood's counsel have successfully represented plaintiffs in complex class actions and currently represent plaintiffs in similar complex class action lawsuits involving false advertising.

85.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Rosewood and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

86.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Rosewood's and the Class members' claims together is manageable.

87.     No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

88.     The prerequisites to maintaining a class action for equitable relief are met. Costco represents to consumers that its Product is "plastic-free," "made with Naturally Derived Ingredients," made with ""plant-based material," "suitable for sensitive skin," and "made from 100% renewable resources."[33] Testing, however, reveals that the Product contains significant levels of microplastics, exposure to which can cause a range of harmful human health consequences—especially when exposure begins at a young age. Defendants have, therefore, acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

89.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

90.     Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff Rosewood seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief appropriate with respect to the Class as a whole.

91.     Defendants' improper consumer-oriented conduct is misleading in a material way in that the marketing, *inter alia*, induced Plaintiff Rosewood and Class members to purchase, purchase more of, and/or pay more for the Product than they would have had they not been deceived by the representations.

---

[33] Collectively, the "Representations."

92.     Defendants made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

93.      Plaintiff Rosewood, the Subclass members, and the Class members have been injured by their purchase of the Product, which they otherwise would not have purchased and would not be continuing to use, which were worth less than what they bargained and/or paid for, which they paid the requested price for, and which they selected over other products that may have been truthfully marketed.

94.     As a direct and proximate result of Defendants' violation of law, Plaintiff Rosewood and members of the New York Subclass, and all Class members paid for the falsely advertised Product and, as such, have suffered damages in an amount to be determined at trial.

95.     Plaintiff Rosewood knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

### CAUSES OF ACTION

### COUNT I
**Violations of the New York General Business Law § 349**
*Against all Defendants*
**(On Behalf of Plaintiff Rosewood and the New York Subclass)**

96.     Plaintiff Rosewood realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

97.     The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

98.     Defendants market Product with the Representations. Testing, however, reveals that the Product contains significant levels of microplastics, exposure to which can cause a range of harmful human health consequences—especially when exposure begins at a young age.

20

99.     Defendants made the misleading statements, representations, and advertisements willfully, wantonly, and with reckless disregard for the truth.

100.     Defendants have violated section 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendants' violation of section 349, Plaintiff Rosewood and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

101.     By reason of the foregoing, Plaintiff Rosewood and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

**COUNT II**
**Violations of the New York General Business Law § 350**
*Against All Defendants*
**(On Behalf of Plaintiff Rosewood and the New York Subclass)**

102.     Plaintiff Rosewood realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

103.     The acts of Defendants, as described above, and each of them, constitute false advertising in that each is misleading in material respects as described *supra*.

104.     New York General Business Law section 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

105.     NYGBL section 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

106.   Defendants made the false statements willfully, wantonly, and with reckless disregard for the truth.

107.   Plaintiff Rosewood and the New York Subclass members have been injured by their purchase of the Product. As a direct and proximate result of Defendants' violation of section 350, Plaintiff Rosewood and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

108.   On May 14, 2025, a pre-suit letter was sent to Defendants via certified mail that provided notice of the violations of state consumer protection statutes and demanded that Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if the Defendants refused to do so, a complaint seeking damages would be filed. Defendants received the letter but have failed to take corrective action.

109.   Accordingly, Plaintiff Rosewood, on behalf of herself and all other members of the New York Subclass, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices.

## COUNT III
### Violation of State Consumer Protection Statutes
### *Against All Defendants*
### (on Behalf of Plaintiff Rosewood and All Class Members)

110.   Plaintiff Rosewood realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

111.   Defendants' unfair, false, misleading, and fraudulent practices in marketing the Product, as alleged herein violate each of the following state consumer protection statutes to the extent that Defendants' Product has been marketed in, and purchased by Class members in, the

respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code § 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2),(3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

112.    Defendants made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

113.    Plaintiff Rosewood and all Class members have been injured by their purchase of the Product.

114.    As a direct and proximate result of Defendants' violation of consumer protection law, Plaintiff Rosewood and all other Class members have suffered damages in an amount to be determined at trial.

115.    On May 14, 2025, a pre-suit letter was sent to Defendants via certified mail that provided notice of Defendants' violations of state consumer protection statutes and demanded that Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, a complaint seeking damages would be filed. Defendants received the letter but have failed to take corrective action. Accordingly, Rosewood, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices, according to the availability of relief under the applicable statutes.

**COUNT IV**
**Breach of Express Warranty of Merchantability**
*Against All Defendants*
**(on Behalf of Plaintiff Rosewood and All Class Members)**

116.    Plaintiff Rosewood realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

117.    Defendant expressly warranted to consumers that the Product conformed to the Representations. These statements constituted affirmations of fact and promises about the nature and quality of the Product, forming the basis of the bargain with consumers.

118.    Testing, however, reveals that the Product contains significant levels of microplastics, directly contradicting Defendants' express representations.

119.     Because the Product fails to conform to the express warranties, Defendants have breached their express warranty obligations under common law principles recognized in all states. As a result of this breach, consumers who relied on these representations when purchasing the Product have suffered harm, including economic injury from purchasing a product that does not meet the promised quality and safety standards.

120.     Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they either would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the premium price Defendants charged for the Product.

121.     On May 14, 2025, Plaintiff Rosewood sent Defendants a notice letter about her breach of the express warranty claims on behalf of herself and the Class.

122.     Plaintiff Rosewood, on behalf of herself and the Class, seeks compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

**COUNT V**
**Breach of Implied Warranty of Merchantability**
***Against Defendant Costco Wholesale Corporation***
**(on Behalf of Plaintiff Rosewood and All Class Members)**

123.     Plaintiff Rosewood realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

124.     Defendant impliedly warranted that the Product conformed to the Representations and that the Product was merchantable and fit for its ordinary purpose—namely, safe and effective use on newborns and young children. Under common law principles recognized in all states, an

implied warranty of merchantability ensures that a product is of acceptable quality, free from defects, and conforms to the reasonable expectations of consumers.

125. Testing, however, reveals that the Product contains significant levels of microplastics, which contradicts its advertised purpose and raises serious health concerns, particularly for infants and young children. Microplastic exposure has been linked to potential long-term health risks, and children are especially vulnerable to toxic exposure due to their developing bodies and increased susceptibility to bioaccumulation.

126. Because the Product fails to conform to consumer expectations and is not fit for its intended use, Defendant has breached the implied warranty of merchantability. As a result of this breach, consumers who purchased the Product did not receive the product they reasonably expected and have suffered harm, including economic losses.

127. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they either would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the premium price Defendants charged for the Product.

128. On May 14, 2025, Plaintiff Rosewood sent Defendant a notice letter about her breach of the implied warranty claims on behalf of herself and the Class.

129. Plaintiff Rosewood, on behalf of herself and the Class, seeks compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

**COUNT VI**
**Unjust Enrichment**
*Against All Defendants*
**(on Behalf of Plaintiff Rosewood and All Class Members)**

130.    Plaintiff Rosewood realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

131.    Defendants have been unjustly enriched at the expense of consumers by marketing the Product with the Representations when it in fact contains significant levels of microplastics. Consumers purchased the Product under the reasonable belief—based on Defendants' representations—that it was free from plastic contaminants and safe for use on newborns and young children.

132.    It would be inequitable for Defendants to retain the benefits of its wrongful conduct without compensating the consumers who purchased the Product under false pretenses. Therefore, Plaintiff and the Class seek restitution and disgorgement of all ill-gotten gains that Defendants obtained through its deceptive marketing and sale of the Product.

133.    On May 14, 2025, Plaintiff Rosewood sent Defendant a notice letter about her unjust enrichment claims on behalf of herself and the Class.

134.    Plaintiff, on behalf of herself and the Class, seeks financial restitution, attorney's fees, costs, and any other just and proper relief available under law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rosewood respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A.      An order certifying the proposed Class and Subclass; appointing Plaintiff Rosewood as representative of the Class and Subclass; and appointing Plaintiff Rosewood's undersigned counsel as counsel for the Class and Subclass;

B.      A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.      An order declaring that Defendants' conduct violates the statutes referenced herein;

D.      An order awarding monetary damages, including actual damages, statutory damages, compensatory, and punitive damages, in the maximum amount provided by law under the common law and the statutes named herein;

E.      An order for prejudgment interest on all amounts awarded;

F.      An order awarding Plaintiff Rosewood and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

G.      Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

135.    Plaintiff Rosewood hereby demands a trial by jury.

DATED: May 23, 2025                Respectfully submitted,

                                   **RICHMAN LAW & POLICY**

                                   _____
                                   Kim E. Richman
                                   1 Bridge Street, Suite 83
                                   Irvington, NY 10533
                                   Telephone: (914) 693-2018
                                   krichman@richmanlawpolicy.com

                                   *Attorney for Plaintiff Rosewood*
                                   *and Proposed Class*